UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| LINDA GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-CV-57-DCP |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 17].  Now before the Court are

Plaintiff's Motion for Judgment on the Pleadings [Doc. 18] and Defendant's Motion for Summary

Judgment [Doc. 22].  Linda Griffin ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("ALJ"), the final decision of Defendant Kilolo Kijakazi

("Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's motion and

**GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On July 19, 2019, Plaintiff filed an application for disability insurance benefits pursuant to

Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* [Tr. 109], and an application for

supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C.

§ 1381 *et seq.* [*Id.* at 110].  Plaintiff claimed a period of disability that began on January 1, 2017

---

[1]     Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

*[Id.* at 109–10]. After her applications were denied initially [*Id.* at 77–110] and upon reconsideration [*Id.* at 114–55], Plaintiff requested a hearing before an ALJ [*Id.* at 177–78]. A telephonic administrative hearing was held on February 25, 2021 [*Id.* at 39–60]. On March 10, 2021, the ALJ found that Plaintiff was not disabled [*Id.* at 17–38]. The Appeals Council subsequently denied Plaintiff's request for review on March 28, 2022 [*Id.* at 5–10], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on May 23, 2022, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2019.

2. The claimant has not engaged in substantial gainful activity since June 19, 2019, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: osteoarthritis, chronic obstructive pulmonary disease (COPD), hypertension, vision loss, depression, anxiety, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and

2

416.967(b) except the claimant should avoid concentrated exposure to pulmonary irritants and workplace hazards. She should avoid work requiring binocular vision. Mentally, the claimant is able to understand and remember simple instructions; maintain concentration for simple tasks; adapt to infrequent change; and have no more than occasional interaction with the public, coworkers, and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 22, 1968 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 19, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 22–33].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

3

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed

4

waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.     DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1.  If claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5

> 5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff argues that the ALJ's determination that she is not disabled is not supported by substantial evidence because the ALJ committed several errors at step four in the sequential process [Doc. 19 pp. 10–15]. Plaintiff argues that the ALJ erred in evaluating the persuasiveness of several medical opinions, including the opinions of Robert Blaine, M.D. ("Dr. Blaine"), the state agency reviewing physicians, and Haruyo Fujiwaki, Ph. D ("Dr. Fujiwaki") [*Id.* at 11–14]. In challenging the ALJ's evaluation of these opinions, Plaintiff interweaves additional arguments as to how the ALJ erred when determining Plaintiff's RFC. Specifically, Plaintiff argues that the ALJ did not support his findings that Plaintiff could perform light work "as he made no specific findings as to how long [] Plaintiff could stand or walk" [*Id.* at 12]; that he "pointed to no evidence

6

which he found persuasive which supported his [RFC]" [*Id.* at 13]; and that he erroneously relied on Dr. Fujiwaki's opinion even though it was issued prior to the alleged onset date, whereas "the ALJ should have ordered a consultative examination regarding [] Plaintiff's mental status" [*Id.*]. Finally, Plaintiff argues the ALJ erred by failing to properly evaluate her symptoms pursuant to Social Security Ruling 16-3p [*Id.* at 14–15].

The Commissioner responds that the ALJ properly evaluated the persuasiveness of each opinion Plaintiff challenges on appeal and that his evaluations of each of these opinions is supported by substantial evidence [Doc. 23 pp. 4–10]. As to Plaintiff's remaining challenges to the ALJ's RFC determination, the Commissioner argues that the ALJ did make specific findings regarding Plaintiff's ability to stand or walk based on relevant evidence in the record, that the ALJ was permitted to rely on Dr. Fujiwaki's opinion despite it being issued prior to the alleged onset date, and that an additional consultative examination was not necessary [*Id.* at 9–10, 13]. Finally, the Commissioner argues that the ALJ properly evaluated Plaintiff's symptoms and his determination that Plaintiff's symptoms are not entirely consistent with the record is supported by substantial evidence [*Id.* at 10–12].

Having reviewed this matter and considered the parties' arguments, the Court finds that Plaintiff has not presented a valid basis for disturbing the Commissioner's decision or otherwise remanding the case for further proceedings.

### A. The ALJ's Evaluation of the Opinion Evidence

Plaintiff first argues the ALJ's decision must be remanded because his analysis of the relevant opinion evidence was deficient, including his evaluation of Dr. Blaine's opinion, the opinions of the state agency medical consultants, and the opinion of Dr. Fujiwaki [Doc. 19 pp. 11–14]. In challenging the ALJ's evaluation of each of these opinions, the ALJ also makes several

7

ancillary challenges to the ALJ's overall RFC determination, including that the ALJ's lifting, standing, and walking limitations are not supported by the record evidence, that that the ALJ failed to rely on evidence he found persuasive, and that the ALJ should have ordered a consultative examination to the extent Dr. Fujiwaki's opinion was irrelevant [*Id.* at 12, 13]. For reasons discussed below, the Court finds that the ALJ applied the correct legal standards in evaluating the opinion evidence; to the extent the ALJ did err in evaluating the opinion of the state agency medical consultants, any such error was harmless; and the ALJ's overall RFC determination was supported by substantial evidence.

### 1. Applicable Law

In determining a claimant's RFC, an ALJ must consider all relevant medical and other evidence, including medical opinion evidence. 20 C.F.R. § 404.1520(e). As of March 27, 2017,[2] an ALJ must "evaluate the persuasiveness of medical opinions and prior administrative medical findings" using five factors,[3] the most important of which are supportability and consistency. *Id.* § 404.1520c(a), (b)(2). The ALJs are required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they]

---

[2] For claims filed prior to March 27, 2017, the weight afforded a medical opinion generally depended on whether the opinion was from "non-examining sources; examining but non-treating sources; [or] treating sources." *See Underwood v. Soc. Sec. Admin.*, No. 3:16-cv-00546, 2017 WL 128518, at *5 (M.D. Tenn. Jan. 11, 2017) (citing 20 C.F.R. § 404.1527). Under the prior regulations, "a treating physician's opinion [was] due 'controlling weight' if that opinion is 'well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id.* This was known as the "treating physician" rule. *Id.*

[3] The five factors include the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c).

8

considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* § 404.1520c(a), (b)(2). As to the supportability factor, section 404.1520c(c)(1) states, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.*§ 404.1520c(c)(1). As for the consistency factor, section 404.1520c(c)(2) states, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

While "the Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the [articulation] requirement," *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022) (Linsay, M.J.), "[d]istrict courts applying the [] regulations both within this circuit and throughout the country consistently apply the articulation requirement literally," *id.*, by requiring the ALJ to "provide a coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), "clearly explain [their] consideration of the opinion and identify the evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), and otherwise "explain how [they] considered the supportability and consistency factors as to each medical opinion." *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021). In other words, the ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580,

9

at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

If the ALJ applied the correct legal standards in evaluating the relevant medical source opinions and administrative medical findings by sufficiently articulating the supportability and consistency factors, this Court's review is otherwise limited to whether the ALJ's evaluations are supported by substantial evidence. *See Mercado v. Kijakazi*, No. 1:21-CV-365, 2022 WL 4357484, at *18 (M.D. Penn. Sept. 20, 2022) ("The ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding.").

### 2.    Dr. Blaine's Opinion

Plaintiff first challenges the ALJ's evaluation of the Commissioner's consultative examiner, Dr. Blaine [Doc. 19 pp. 11–12].   In evaluating the persuasiveness of Dr. Blaine's opinion, the ALJ made the following findings:

> Consultative evaluator Robert A. Blaine, M.D. opined that the claimant is able to stand or walk for three hours in an eight-hour day and sit for eight hours in an eight-hour workday (Exhibit B7F).  He further opined that she is able to lift and carry five pounds frequently and twenty pounds infrequently (Id.).  The undersigned finds the opinion of Dr. Blaine to be unpersuasive.  Although he noted the claimant had a mild limping gait, his opinion that she is able to stand or walk for only three hours is not well supported by his other observations including normal tandem walk, heel and toe walk, and single leg stand, bilaterally.  Moreover, the claimant's treatment providers did not document observations of antalgic gait during the relevant period.  Likewise, his opinion regarding the claimant's lifting ability is not well supported by his own observation of full grip strength and full flexor and extensor strength of the upper and lower extremities, and it is inconsistent with the claimant's primary care provider's observation that she had normal muscle strength and tone.  The overall evidence indicates that the claimant is able to lift and carry slightly more weight on a frequent basis than opined by Dr. Blaine.

[Tr. 30].

10

On appeal, Plaintiff argues that the ALJ "did not sufficiently articulate either the supportability or consistency factors in evaluating Dr. Blaine's opinion[]" [Doc. 19 p. 12 (citing *Sparks v. Kijakzi*, No. 2:21-CV-102-DCP, 2022 WL 4546346 (E.D. Tenn. Sept. 28, 2022))]. Plaintiff submits that the ALJ "pointed to no evidence which supported his conclusion that [she] could lift slightly more weight frequently than Dr. Blaine opined, nor did he point to any evidence which supported his finding that [she] could physically perform light work as he made no specific findings as to how long [she] could stand or walk" [*Id.*]. Plaintiff argues these alleged errors by the ALJ made it so there was not a coherent explanation for his reasoning as to Dr. Blaine's decision [*Id.*].

In response, the Commissioner argues that "the ALJ sufficiently explained his consideration of the supportability and consistency factors in evaluating Dr. Blaine's opinion" [Doc. 23 p. 4]. The Commissioner asserts that the ALJ sufficiently articulated the supportability factor to the extent he discounted Dr. Blaine's standing and walking limitations based on his own exam findings that included normal tandem walk, normal heel and toe walk, and normal single leg stand with each leg and discounted Dr. Blaine's lifting requirements based on his own findings of full grip strength and full flexor and extensor strength in both arms and legs [*Id.* at 4–5]. As to the consistency factor, the Commissioner cites the ALJ's statements that Dr. Blaine's standing and walking limitations were inconsistent with treatment records showing no gait abnormalities and his lifting and carrying requirements were inconsistent with a primary care provider's findings that Plaintiff had normal muscle strength and tone [*Id.* at 5]. The Commissioner adds that Plaintiff's argument "reflects a misunderstanding of the burden of review . . . [as] it is a claimant's burden to prove her limitations, not the ALJ's burden to prove her capabilities" [*Id.* (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999))].

The Court interprets Plaintiff's argument as raising two distinct issues: (1) whether the ALJ sufficiently articulated the consistency and supportability factors in evaluating Dr. Blaine's opinion, and (2) whether the ALJ's opined limitations regarding Plaintiff's ability to stand or walk and lift or carry are supported by substantial evidence. The Court will address each issue in turn.

### a. The Consistency and Supportability of Dr. Blaire's Opinion

The Court finds that the ALJ sufficiently articulated both the consistency and supportability factors in evaluating Dr. Blaire's opinion. As to the supportability factor, the ALJ stated that Dr. Blaine's finding that Plaintiff could only stand or walk for three hours was supported by his finding that Plaintiff had a mild limping gait, but was "not well supported by his other observations including normal tandem walk, heel and toe walk, and single leg stand, bilaterally" [Tr. 30]. The ALJ further stated that Dr. Blaine's opined lifting restrictions were "not well supported by his own observation of full grip strength and full flexor and extensor strength of the upper and lower extremities" [Id.]. The Court finds that these statements by the ALJ, which considered Dr. Blaine's opined limitations and cited specific evidence from his own examination that primarily contradicted these limitations, show that the ALJ considered "the objective medical evidence and supporting explanations presented by [Dr. Blaine] . . . to support his . . . medical opinion," 20 C.F.R. § 404.1520c(c)(1), and sufficiently articulated why the evidence was insufficient to support his opined limitations.

The Court finds that the ALJ also sufficiently considered and articulated the extent to which Dr. Blaine's opined limitations are "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Specifically, the ALJ stated that Dr. Blaine's opined limitation that Plaintiff could only stand or walk for three hours was inconsistent with the reports of Plaintiff's treatment providers, who "did not document

12

observations of antalgic gait during the relevant period" [Tr. 30]. The ALJ further stated that Dr. Blaine's opined limitation regarding Plaintiff's lifting abilities was "inconsistent with [Plaintiff's] primary care provider's observation that she had normal muscle strength and tone" [*Id.*]. The Court finds that the ALJ's reference to specific medical findings in the record that contradicted the Dr. Blaine's findings satisfies the articulation requirements for the consistency factor and distinguishes this case from *Sparks*. *See Sparks*, 2022 WL 4546346, at *8, *10 (finding the ALJ erred when he failed to make any persuasiveness finding as to one of two medical opinions and his only statement regarding the consistency of the other opinion was his statement that it was "consistent with and supported by the longitudinal record").[4] Moreover, the ALJ's citation to specific limitations from Dr. Blaine's opinions, including his opined standing-walking and lifting-carrying limitations, and how those limitations were unsupported by, and inconsistent with, specific evidence in the record were sufficient to "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd*, 2021 WL 2535580, at *6.

   **b.     The ALJ's Standing-Walking and Lifting-Carrying Limitations**

   In challenging the ALJ's evaluation of Dr. Blaire's opinion, Plaintiff also argues that the ALJ "pointed to no evidence which supported his conclusion that the Plaintiff could lift slightly

---

[4]      To the extent it would have been helpful for the ALJ to cite a specific exhibit or page of the transcript in referencing the primary care provider's observations, an earlier portion of the ALJ's step-four analysis—where he was also discussing Plaintiff's lifting-carrying abilities—makes clear that he was referencing page twelve of Exhibit B3F and resolves any ambiguity [Tr. 28 ("[D]espite her assertion that she is limited in her lifting ability, the claimant was observed by her primary care provider and by Dr. Blaine to have normal muscle strength and tone (Exhibit B3F p. 12; Exhibit B7F)"); *id.* at 412 (containing Exhibit B3F p. 12)]. *See Oliver v. Kijakazi*, No. 3:22-CV-28-DCP, 2023 WL 2587487, at *7-8 (E.D. Tenn. Mar. 21, 2023) (finding that while the ALJ did not comply with the literal requirements of section 404.1520c any error was harmless to the extent other portions of the ALJ's step-four analysis clarifies what treatment notes the ALJ was referring to).

13

more weight frequently than Dr. Blaine opined," and "did [not] point to any evidence which supported his finding that the Plaintiff could physically perform light work as he made no specific findings as to how long the Plaintiff could stand or walk" [Doc. 19 p. 12]. Plaintiff argues the ALJ "simply failed to point to any evidence which was consistent and supported his findings that the Plaintiff could perform those activities" [*Id.*]. The supportability and consistency factors, however, are not used by this Court to determine whether the ALJ's opined limitations are supported by, and consistent, with the evidence but, rather, are used by the ALJ to determine the persuasiveness of the relevant medical opinions. *See* 20 C.F.R. § 404.1520c(c)(1)–(2). This Court's review, in turn, looks at whether the ALJ sufficiently articulated those factors—as was just done above. To the extent Plaintiff challenges the ALJ's opined RFC limitations, the Court's review of such findings is limited to whether the findings are supported by substantial evidence. *See Blakley*, 581 F.3d at 405 ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

Here, the Court finds there is substantial evidence to support both the ALJ's opined standing-walking limitations and lifting-carrying limitations. Turning first to the ALJ's opined standing-walking limitations, Plaintiff asserts that the ALJ "made no specific findings as to how long the Plaintiff could stand or walk" [Doc. 19. p. 12]. Plaintiff also asserts, however, that the ALJ concluded that "she could be on her feet for six hours in an eight[-]hour work[-]day, as is required for light work" [*Id.* (citing SSR 83-10, 1983 WL 31251 (Jan. 1, 1983))]. The Court finds, consistent with Plaintiff's own acknowledgment, that the ALJ did assess a specific standing-walking limitation. The ALJ begins his step-four analysis by finding that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" [Tr.

14

25].  At another point, the ALJ also states that "[Plaintiff] remains able to perform the standing and walking requirements of light work" [*Id.* at 28].  Sections 404.1567(b) and 416.967(b) define light work as "requir[ing] a good deal of walking or standing" while Social Security Ruling 83-10 states that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *6.  The ALJ's statements and citations to the applicable authority, which further elaborate on what is meant by light work, establish that the ALJ did make specific findings as to Plaintiff's standing-walking limitations.

The Court also finds that the ALJ's opined standing-walking limitations are supported by substantial evidence.  The ALJ provided the following analysis in his decision:

> Based on all of the evidence, the undersigned finds that the claimant is able to perform work at the above residual functional capacity.  Although she asserted that that she is not able to be on her feet for prolonged periods, the claimant's treatment providers did not document gait abnormalities during the relevant period. The undersigned acknowledges that Dr. Blaine observed the claimant to have a mild limp favoring the left lower extremity, but her tandem walk, heel and toe walk, and single leg stand were all normal (Exhibit B7F). Moreover, the claimant reported that her right knee pain was worse than the left, but her right knee x-rays were normal (Exhibit B8F). Accordingly, the claimant remains able to perform the standing and walking requirements of light work.

[Tr. 28.  In this analysis, the ALJ acknowledged Plaintiff's statements about her limited ability to stand or walk, but contrasted them with records from Plaintiff's own treating physicians, the findings of Dr. Blaine—which, as already discussed, contradicted his findings that Plaintiff had greater standing-walking limitations than those assessed by the ALJ—and objective medical evidence in the form of a "normal" x-ray.  The Court finds that, in doing so, the ALJ provided substantial evidence for his findings that Plaintiff was limited to "light work," including standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.  *See Cooper v.*

15

*Kijakazi*, No. 2:20-0036, 2022 WL 37047, at *6 (M.D. Tenn. Jan. 4, 2022) (finding the ALJ's determination that Plaintiff was restricted to light work was supported by substantial evidence including the ALJ's citation to "normal x-rays . . . [and] normal examination findings with respect to Plaintiff's gait, ambulation, motor strength, tone, and movement of extremities"), *report and recommendation adopted*, 2022 WL 187813 (M.D. Tenn. Jan. 20, 2022).

The Court further finds the ALJ's determination that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally is supported by substantial evidence, aligning with the definitions of "light work" contained in sections 404.1567(b) and 416.967(b). The ALJ included the following analysis in his decision:

> [D]espite [Plaintiff's] assertion that she is limited in her lifting ability, [she] was observed by her primary care provider and by Dr. Blaine to have normal muscle strength and tone (Exhibit B3F p. 12; Exhibit B7F). The undersigned finds that the claimant is able to lift and carry ten pounds frequently and twenty pounds occasionally. However, heavier lifting and carrying could be expected to exacerbate the claimant's pain, fatigue, or shortness of breath.

[Tr. 28]. The ALJ then provided further analysis on Plaintiff's shortness of breath, stating,

> The claimant testified that she has significant shortness of breath due to her respiratory impairment. Dr. Blaine documented a normal respiratory evaluation, and the claimant's chest x-rays showed lungs clear of infiltrate, consolidation, or nodular density (Exhibit B3F p. 23; Exhibit B7F). However, the claimant's primary care provider observed expiratory wheezes and decreased breath sounds on occasion during the relevant period.

[*Id.*]. Finally, as previously cited, the ALJ also provided further discussion of Plaintiff's lifting and carrying abilities in addressing his evaluation of Dr. Blaine's opined lifting-carrying limitations, noting they were "not well supported by [Dr. Blaine's] own observation of full grip strength and full flexor and extensor strength of the upper and lower extremities" [*Id.* at 30].

As with his analysis of Plaintiff's standing-walking limitations, the ALJ's analysis of Plaintiff's lifting-carrying limitations consisted of acknowledging Plaintiff's statements regarding

16

her limitations but contrasting those statements with the medical evidence from both Plaintiff's treating physicians as well as the consultative examination. The Court therefore finds the ALJ's determination that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally is supported by substantial evidence. *See Wudzinski v. Comm'r of Soc. Sec.*, No. 4:15-cv-11062, 2016 WL 8671222, at *8 (E.D. Mich. July 29, 2016) (finding the ALJ's RFC determination that the plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently was supported by substantial evidence with the ALJ citing to "specific medical facts" and "nonmedical evidence," including the plaintiff's treatment records, statements of pain, and progress notes regarding the ability to perform daily functions), *report and recommendation adopted*, 2016 WL 4607638 (E.D. Mich. Sept. 6, 2016).

The Court therefore finds that the ALJ applied the correct legal standards in evaluating the persuasiveness of Dr. Blaine's opinion as he sufficiently articulated the consistency and supportability factors and that, to the extent Plaintiff challenges the evidence supporting the ALJ's opined standing-walking and lifting-carrying limitations, those limitations are supported by substantial evidence in the record.

### 3. The State Agency Medical Consultants' Opinions

Plaintiff also challenges the ALJ's evaluation of the state agency medical consultants' opinions. The ALJ made the following findings in evaluating the persuasiveness of the opinions from the state agency medical consultants, or physicians:

> The State agency medical consultants opined that the claimant is able to perform work at the medium exertional level, performing all postural activities occasionally (Exhibit B2A; Exhibit B3A; Exhibit B8A; Exhibit B9A). They further opined that the claimant is limited to monocular vision (Id.). Finally, they opined that she should avoid concentrated exposure to pulmonary irritants and workplace hazards (Id.). The undersigned finds the opinions of the consultants to be unpersuasive. They did not examine the claimant or consider more recent medical evidence

17

submitted at the hearing level, documenting the claimant's complaints of worsening knee pain.  Their opinion is inconsistent with the overall evidence, which indicates that the claimant's combination of impairments result in more significant lifting and carrying limitations than opined by the consultants.

[Tr. 30].

On appeal, Plaintiff argues that the ALJ "made no findings regarding the consistency or supportability of the state agency physicians' opinions, but merely stated that they were unpersuasive" [Doc. 16 p. 12].  Plaintiff goes on to argue that despite finding the opinions unpersuasive, the ALJ "obviously adopted some of their findings, particularly the finding that the Plaintiff should avoid work requiring monocular vision" [*Id.*].  Plaintiff asserts that "[w]ithout some analysis of which of those opinions [he] found persuasive, it is submitted that his analysis failed to provide an accurate and logical bridge between the evidence and his conclusions" [*Id.* at 13 (citing *Sparks*, 2022 WL 4546346)].  Finally, Plaintiff argues that the ALJ "pointed to no evidence which he found persuasive which supported his residual functional capacity [finding], and such was error" [*Id.*].

In response, the Commissioner notes that "[t]he ALJ considered that the consultants were not able to examine Plaintiff or to review more recent medical evidence that the ALJ found documented complaints of worsening knee pain" [Doc. 23 p. 6].  The Commissioner further notes that the ALJ "found the consultants' findings unpersuasive, in that he found the record supported *additional* restrictions in Plaintiff's exertional functioning—to a range of light work" whereas the consultants opined that Plaintiff could perform medium work [*Id.*].  The Commissioner adds that, "[i]mportantly, the ALJ found the consultants' findings inconsistent with the overall evidence, which indicated to the ALJ that Plaintiff's combination of impairments resulted in more significant lifting and carrying limitations" [*Id.*].  Finally, the Commissioner argues that Plaintiff did not

"engag[e] with the substance of the consultants' findings" when arguing that the ALJ failed to explain which parts of their findings he found persuasive [*Id.*].

The Court again interprets Plaintiff's argument as raising two distinct issues, including (1) whether the ALJ properly evaluated the persuasiveness of the state agency consultants' opinions by articulating the consistency and supportability factors, [Doc. 19 pp. 12–13], and (2) whether the ALJ "pointed to [any] evidence which he found persuasive which supported his [RFC determination]" [*Id.* at 13]. The Court will address each issue in turn.

### a. The Consistency and Supportability of the State Agency Medical Consultants' Opinions

Plaintiff asserts that the ALJ "made no findings regarding the consistency or supportability of the state agency physicians' opinions" [Doc 19 p. 12]. While noting that the ALJ does not provide a fulsome discussion , the Court finds that the ALJ adequately addressed these factors when considering the opinion as a whole.

Turning first to the consistency factor, the Court finds that the ALJ sufficiently articulated how the state agency medical consultants' opinions were, and were not, "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Specifically, the ALJ cited the fact that the consultants did not have access to more-recent evidence documenting Plaintiff's complaints of worsening knee pain—evidence that appears to be inconsistent with the consultants' findings that Plaintiff could perform work at the medium exertional level [Tr. 30]. The ALJ also stated that the consultants' opinions were "inconsistent with the overall evidence, which indicates that [Plaintiff's] combination of impairments results in more significant lifting and carrying limitations than opined by the consultants" [*Id.*]. While the ALJ did not cite specific record evidence in making this statement,

19

he did identify a specific limitation he found inconsistent. In turn, as already cited above, the ALJ further analyzed this specific limitation—Plaintiff's ability to lift and carry—elsewhere in his opinion and did cite to specific evidence there. Specifically, the ALJ found that "heavier lifting and carrying [than was permitted for light work] could be expected to exacerbate the claimant's pain, fatigue, or shortness of breath" [*Id.* at 28]. The Court finds that when considering these two portions of the ALJ's decision in conjunction, as well as the ALJ's citation to Plaintiff's knee pain, the ALJ sufficiently articulated the consistency factor. *See, e.g.*, *Barber v. Comm'r of Soc. Sec. Admin.*, No. 1:20-cv-00064, 2022 WL 853208, at *4 (M.D. Tenn. Mar. 22, 2022) ("The ALJ's discussion of Dr. Paul's opinion, which the ALJ found partially persuasive, is less fulsome, but nevertheless adequate when considering the opinion as a whole. . . . With regard to consistency . . . the ALJ noted that Dr. Paul's opinion was generally consistent with the [RFC], which was discussed earlier in the opinion.").[5]

Whether the ALJ sufficiently articulated the supportability factor as to the state agency medical consultants' opinions is a closer call. On this point, the Commissioner's only argument is that "[t]he ALJ [] considered that the consultants were not able to examine Plaintiff or to review more recent medical evidence that the ALJ found documented complaints of worsening knee pain" [Doc. 23 p. 6 (citing Tr. 30)]. On the one hand, both of these considerations appear to be more relevant to other factors set forth in section 404.1520c. As just discussed, that the consultants did not have access to later reports of Plaintiff's knee pain goes to how the consultants' findings compare to other evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(2). Similarly, that the

---

[5]     Even if, contrary to the Court's findings, the ALJ did not sufficiently articulate the consistency factor, remand would not be warranted as the ALJ's error would remain harmless for the reasons discussed below.

consultants did not examine Plaintiff themselves is considered under section 404.1520c(c)(3) regarding the medical provider's "[r]elationship with the claimant." Specifically, section 404.1520c(c)(3)(iv) permits[6] the ALJ to consider the "[e]xtent of the treatment relationship" including "[t]he kinds and extent of examinations and testing the medical source has performed" as that "may help demonstrate the level of knowledge the medical source has of [the claimant's] impairments."

At the same time, some lower courts within this circuit have "note[d] the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer, like a state agency physician, who forms her opinion after a holistic review of the medical evidence of record." *See Elaine S. v. Comm'r of Soc. Sec.*, No. 3:22-cv-240, 2023 WL 2623575, at *4 (S.D. Ohio Mar. 24, 2023) ("[Noting] the inherent lack of clear delineation between supportability and consistency when an ALJ evaluates the opinion of a reviewer, like a state agency physician, who forms her opinion after a holistic review of the medical evidence of record.") (citing *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119-TMP, 2021 WL 3056108 (W.D. Tenn. 20, 2021)); *see also Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, at *6–7 (S.D. Ohio Mar. 24, 2023) (same).

In one of those cases, *Elaine S.*, the court found that while the ALJ did not directly address the supportability factor when evaluating the state agency medical consultants' opinions, any error by the ALJ was harmless where the ALJ analyzed the same evidence the consultants had relied on

---

[6]     The ALJ is required to articulate the consistency and supportability factors under sections 404.1520c(c)(1), -(2), whereas they are permitted, but not required, to consider the medical provider's relationship with the claimant under section 404.1520c(c)(3). *See* 20 C.F.R. § 404.1520c(b)(2) (stating the ALJ "may, but [is] not required to, explain" how they considered the relationship, specialization, and other factors).

21

and noted the discrepancies between their opinions and any later-obtained evidence. *See Elaine S.*, 2023 WL 2623575, at *4–8 (finding "the ALJ addressed particular pieces of medical evidence upon which the consultants based their findings—the cornerstone of supportability" and that the ALJ acknowledged the "opinions were partially inconsistent with the evidence as a whole (including evidence not available to the physicians at the time of their review)"). The Court finds the reasoning of this opinion persuasive. The ALJ in this case did not sufficiently articulate the supportability factor as his analysis fails to address the "objective medical evidence" the consultants relied on, and whether that evidence aligns with, or contradicts, their opined limitations, or the "supporting explanations" provided by the consultants and whether those explanations justify their opined limitations. *See* 20 U.S.C. § 404.1520c(c)(1). The ALJ did, however, analyze the same medical evidence that the state agency medical consultants had available to them and distinguished their opinions based on the later-obtained evidence, including Plaintiff's documented pain. The Court therefore finds that any error by the ALJ in failing to sufficiently articulate the supportability factor was harmless. *See Vaughn*, 2021 WL 3056108, at *9–12 (finding that while the ALJ failed to articulate the supportability factor as to a relevant medical opinion, such error was harmless where the ALJ's evaluation of the opinion was "predicated on a review of [the claimant's] medical history and, when recounting that same medical history, the ALJ identified several instances where [the claimant's] medical records did not support a finding of disability" such that "the ALJ's opinion is only one step removed from articulating why she believed the basis for [the] opinion was faulty, i.e. an explanation of the supportability factor").

The Court finds that any error by the ALJ in failing to sufficiently articulate the consistency and supportability factors was also harmless for another reason, namely, that the ALJ imposed

22

greater limitations than those opined by the state agency medical consultants and, instead, found their opinions unpersuasive to the extent Plaintiff had greater limitations. Specifically, the ALJ stated that "[t]heir opinion[s] [are] inconsistent with the overall evidence, which indicates that the claimant's combination of impairments result in more significant lifting and carrying limitations than opined by the consultants" [Tr. 30]. The Court therefore finds that any error by the ALJ in failing to sufficiently articulate the supportability factor was harmless for this reason as well. *See Tina D. v. Comm'r of Soec. Sec.*, No. 3:22-cv-152, 2023 WL 2759861, at *7 (S.D. Ohio Apr. 3, 2023) (finding that "[e]ven if . . . the ALJ could have improved upon her articulation of the consistency and supportability factors, the Court will not remand for harmless error" when the ALJ found state agency medical opinions only partially persuasive and "explain[ed] why she added several limitations beyond those endorsed by the agency physicians"); *Alec F. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00467, 2022 WL 278307, at *11 (S.D. Ohio Jan. 31, 2022) (finding that even if the ALJ erred in evaluating the supportability and consistency of the psychological consultative examiner's opinion and ultimately finding it unpersuasive, "such error is harmless as [the ALJ] ultimately adopted greater limitations than that advocated by [the examiner]"); *cf. Malone v. Comm'r of Soc. Sec.*, No. 1:16-cv-1084, 2017 WL 9485649, at *14 (N.D. Ohio May 4, 2017) ("Because the ALJ found that plaintiff's RFC was more restricted than had the state-agency reviewing physicians, his assignment of no weight to their opinions was harmless."), *report and recommendation adopted*, 2017 WL 2821449 (N.D. Ohio June 30, 2017); *Elaine S.*, 2023 WL 2623575, at *6–8 (S.D. Ohio Mar. 24, 2023) (finding that any error by the ALJ when evaluating the state agency physicians' opinions and finding them only partially persuasive was harmless because the plaintiff failed to explain "how the ALJ's adoption of additional postural limitations [beyond those opined by the physicians] would materially affect her ultimate disability finding")

23

(citing *Kobetic v. Comm'r of Soc. Sec.,* 114 F. App'x 171, 173 (6th Cir. 2004)).

Here, the ALJ stated he was discounting the consultants' opinions because he believed there were greater lifting-carrying limitations and, in fact, included greater lifting-carrying limitations than those opined by the state agency medical consultants. Specifically, the state agency medical consultants opined that Plaintiff could lift or carry fifty pounds occasionally and twenty-five pounds frequently [Tr. 85, 101], whereas the ALJ found Plaintiff could only lift and carry ten pounds frequently and twenty pounds occasionally [*Id.* at 28]. As to what limitations the ALJ in this case did adopt that were consistent with the state agency medical consultants' opined limitations, the only limitation that Plaintiff alleges they share is Plaintiff should avoid work requiring binocular vision [Doc. 19 p. 12]. However, the ALJ expressly stated in his opinion that he was limiting Plaintiff to monocular vision based on Dr. Blaine's findings, not the state agency medical consultants [Tr. 28 ("[I]n consideration of the claimant's decreased right eye vision noted by Dr. Blaine, she should avoid work requiring binocular vision.")]. More importantly, the ALJ did not state that he was discounting the state agency medical consultants' opinions because they precluded Plaintiff from binocular work. Finally, Plaintiff does not argue on appeal that he should have been assessed any greater limitations related to her vision. *See Tyrone H.*, 2023 WL 2623571, at * ("On appeal, Plaintiff has made no claim that the adopted RFC failed to capture his capacity for work . . . . So while he claims that the ALJ erred in her discussion of the findings, he makes no claim that the adopted findings—which the ALJ purportedly failed to explain—would materially affect the ultimate disability finding."). Rather, as discussed previously, Plaintiff argues on appeal that the ALJ should have assessed greater lifting-carrying limitations. However, since the ALJ already assessed greater lifting-carrying limitations than the consultants and discounted their opinions because of that fact, the ALJ's error in failing to properly explain his evaluation of the

24

consultants' opinions is harmless.

**b.** **The Persuasiveness of the Evidence Relied on by the ALJ**

At the end of her discussion of the ALJ's evaluation of the state agency medical consultants' opinions, Plaintiff briefly argues that the ALJ "pointed to no evidence which he found persuasive which supported his residual functional capacity, and such was error" [Doc. 19 p. 13]. Plaintiff makes a similar argument later on, asserting "there was no evidence found to be persuasive by the [ALJ] that the Plaintiff could either lift more weight than opined by Dr. Blaine, nor be on her feet for more than three hours per day as found by Dr. Blaine" [*Id.* at 13–14]. To the extent Plaintiff is arguing that the ALJ failed to cite specific evidence that was persuasive or supported his opined lifting-carrying or walking-standing limitations, the Court addressed this argument above and found the ALJ's opined limitations are supported by substantial evidence.

To the extent Plaintiff is instead arguing that the ALJ erred because he "pointed to no *opinions* which he found persuasive," this argument is similarly unavailing as an ALJ is not required to rely on any medical opinion in determining a claimant's RFC, let alone only those opinions they find persuasive. *Barton v. Comm'r of Soc. Sec.*, No. 2:20-cv-2182, 2021 WL 1380258, at *6 (S.D. Ohio Mar. 25, 2021) ("The governing regulations [do not indicate] that an RFC determination is substantially supported only if it is consistent with a medical opinion. [The Sixth Circuit] has explicitly rejected the argument that an RFC determination cannot be supported by substantial evidence unless it is consistent with a medical opinion.") (first citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013); and then citing *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017)). "[T]o require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability." *Shepard*, 705 F.

25

App'x at 442–43 (quoting *Rudd*, 531 F. App'x at 728).

### 4.      Dr. Fujiwaki's Opinion

The final opinion that Plaintiff argues the ALJ erred in evaluating is that of Dr. Haruyo Fujiwaki [Doc. 19 p. 13].   Plaintiff argues the ALJ erred in finding Dr. Fujiwaki's opinion persuasive [*Id.* (citing Tr. 29)].  Plaintiff submits that his opinion "was simply not relevant, as it is dated January 7, 2019, which is 42 months before [Plaintiff's] alleged onset date" [*Id.* (citing Tr. 392)].  Plaintiff asserts that "[i]f there were unanswered questions as to the severity of [] Plaintiff's impairments, the [ALJ] is not permitted to substitute his own conclusions rather than seeking a consultative examination" and that the ALJ should have ordered a consultative examination regarding Plaintiff's mental status [*Id.* (citing *Smith v. Astrue*, 2:08-CV-139, 2009 WL 1616991 (E.D. Tenn. June 9, 2009))].

In response, the Commissioner argues that the ALJ properly considered and articulated the supportability and consistency factors, among others, in determining Dr. Fujiwaki's opinion was persuasive [Doc. 23 pp. 7–9].  The Commissioner asserts that Plaintiff does not challenge the substance of Dr. Fujiwaki's opinion or the ALJ's analysis thereof and, instead, argues the opinion is not relevant [*Id.* at 9].  In this regard, the Commissioner argues that the ALJ recognized that Dr. Fujiwaki's opinion was rendered prior to Plaintiff's amended onset date, but reasonably found it probative for the reasons discussed in his analysis [*Id.* at 8].  The Commissioner argues that this Court has found evidence or medical records that predate an alleged onset date are not necessarily irrelevant [*Id.* at 9 (citing *Goins v. Berryhill*, No. 3:16-CV-657-DCP, 2018 WL 4512063, at *5 (E.D. Tenn. Sept. 20, 2018))], and like that case, the ALJ in this case considered Dr. Fujiwaki's opinion in conjunction with the medical evidence from the time after Plaintiff's alleged onset of disability such that remand is not required [*Id.* at 10].  As to Plaintiff's remaining argument that

26

the ALJ should have ordered a consultative psychological examination and that his failure to do so led the ALJ to improperly substitute his own judgment, the Commissioner argues that the ALJ's mental RFC findings were entirely supported by the findings of the state agency psychological consultants, while some medical evidence must support the RFC, that evidence need not come from a medical opinion [*Id.* at 13].

The Court will first address whether the ALJ sufficiently articulated the consistency and supportability factors before turning to Plaintiff's arguments that the opinion of Dr. Fujiwaki was irrelevant and the ALJ should have instead obtained an updated psychological consultative examination.

### a. The Consistency and Supportability of Dr. Fujiwaki's Opinion

The Court finds that the ALJ did sufficiently articulate both the supportability and consistency factors. As to the supportability factor, the ALJ stated that Dr. Fujiwaki's opinion "is well supported by his observations from that evaluation, including the claimant's performance on the mental status examination" [Tr. 29–30]. The ALJ also provided additional details in his decision both as to what observations Dr. Fujiwaki made during his examination and how he rated Plaintiff's performance as a result. Specifically, the ALJ stated that Dr. Fujiwaki observed,

> [Plaintiff was] cooperative with adequate manner of relating, social skills, and overall presentation (Id.). Her mood was dysthymic and her affect was somewhat anxious (Id.). She was oriented, with intact concentration and attention for the tasks administered, but she had mildly impaired recent and remote memory skills (Id.).

[*Id.* at 27]. As for how Dr. Fujiwaki rated Plaintiff's performance, the ALJ noted,

> [Dr. Fujiwaki] opined that the claimant is able to follow and understand simple directions and instructions and perform simple tasks independently (Exhibit B1F). He further opined that the claimant is mildly limited in maintaining attention and concentration and maintaining a regular schedule due to depression (Id.). He opined that the claimant is able to learn new tasks, and she has a mild-to-moderate limitation in performing complex tasks independently (Id.). Finally, Dr. Fujiwaki

27

opined that the claimant is able to make appropriate decisions, but she is moderately limited in relating adequately with others and appropriately dealing with stress (Id.).

[*Id.* at 29]. The ALJ noted what specific observations Dr. Fujiwaki had made at the time of his examination, noted how Dr. Fujiwaki rated Plaintiff's performance based on these observations, and found his opined limitations persuasive to the extent they aligned with his observations and performance ratings. In doing so, the ALJ sufficiently articulated the supportability factor as the ALJ explained how "the objective medical evidence and supporting explanations presented by [Dr Fujiwaki]" supported his opined limitations. 20 C.F.R. § 404.1520c(c)(1).

The Court finds that the ALJ also sufficiently articulated the consistency factor. In evaluating the persuasiveness of Dr. Fujiwaki's opinion, the ALJ stated,

> Although Dr. Fujiwaki's opinion was rendered prior to the amended onset date, the claimant's complaints regarding her symptoms during that evaluation appear to be consistent with her complaints to her mental health provider during the relevant period. Moreover, the undersigned notes that at the time of the evaluation, the claimant was not receiving specialized mental health treatment, and the claimant reported some improvement with medication, which is consistent with the generally normal mental status examinations noted by the claimant's mental health treatment provider. The overall evidence indicates that the claimant has no more than moderate limitation in any of the areas of mental functioning, and Dr. Fujiwaki's opinion is consistent with that evidence and with the opinions of the State agency psychological consultants.

[Tr. 30]. These statements establish that the ALJ sufficiently articulated the consistency factor to the extent he compared Dr. Fujiwaki's opined limitations to claimant's alleged symptoms at two periods of time, the notes of Plaintiff's mental health provider, and the reports of the state agency psychological consultants. The Court therefore finds that the ALJ sufficiently articulated both the consistency and supportability factors in evaluating the persuasiveness of Dr. Fujiwaki's opinion.

**b.**     **The ALJ's Reliance on Dr. Fujiwaki's Opinion**

Plaintiff's main contentions, however, focus less on the supportability and consistency

28

factors and more on whether the ALJ should have relied on, or evaluated the persuasiveness of, Dr. Fujiwaki's opinion at all. Specifically, Plaintiff argues Dr. Fujiwaki's opinion was "simply not relevant" as it was made more than three years before Plaintiff's alleged onset date [Doc. 19 p. 13]. Plaintiff goes on to argue that if there were unanswered questions as to the severity of Plaintiff's mental impairments, the ALJ should have ordered a consultative examination instead of "substitut[ing] his own conclusions" [*Id.* (citing *Smith*, 2009 WL 1616991)]. The Court finds that, contrary to Plaintiff's assertions, the ALJ was permitted to rely on Dr. Fujiwaki's opinion to the extent he considered the opinion alongside the relevant post-onset-date evidence, the ALJ did not improperly substitute his own opinion for that of the medical experts, and the ALJ did not err in failing to order a new psychological consultative examination.

As to Plaintiff's argument that Dr. Fujiwaki's opinion is irrelevant to the extent it was authored prior to the alleged onset date, "[t]he Court is unaware of, and Plaintiff has not cited to, any rule, regulation, or case prohibiting an ALJ from considering evidence in the record simply because it is from prior to an alleged disability onset date." *Puterbaugh v. Colvin*, No. 3:12cv00031, 2013 WL 3989581, at *15 (S.D. Ohio Aug. 2, 2013) (rejecting the plaintiff's argument that the pre-onset-date evidence was "irrelevant"), *report and recommendation adopted*, 2013 WL 4457364 (Aug. 20, 2013). Rather, "an ALJ is free to consider all the evidence in the record as long as [the ALJ] considers both pre and post-onset date evidence in [the ALJ's] determination." *Lane v. Comm'r of Soc. Sec.*, No. 1:14CV2803, 2016 WL 410871, at *6 (N.D. Ohio Feb. 3, 2016); *see also Goins*, 2018 WL 4512063, at *5 (finding the ALJ did not commit reversible error by relying on medical opinion from four years prior to the alleged onset date when the ALJ also relied on evidence from after the onset date) (citing *DeBoard v. Comm'r of Sec. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006)). The Sixth Circuit has itself "recognize[d] that evidence

29

presented . . . predating the onset of disability, *when evaluated in combination with later evidence*, may help establish disability." *DeBoard*, 211 F. App'x at 414.

In this case, the ALJ expressly acknowledged when evaluating Dr. Fujiwaki's opinion that it was written prior to Plaintiff's alleged onset date [Tr. 30 ("Dr. Fujiwaki's opinion was rendered prior to the amended onset date")]. The ALJ noted, however, that Dr. Fujiwaki's findings remained consistent with those reports of Plaintiff's mental health providers during the relevant period as well as the evidence and opinions from the state agency psychological consultants [*Id.*]. Specifically, he stated,

> [T]he claimant's complaints regarding her symptoms during [Dr. Fujiwaki's] evaluation appear to be consistent with her complaints to her mental health provider during the relevant period. Moreover, the undersigned notes that at the time of the evaluation, the claimant was not receiving specialized mental health treatment, and the claimant reported some improvement with medication, which is consistent with the generally normal mental status examinations noted by the claimant's mental health treatment provider. The overall evidence indicates that the claimant has no more than moderate limitation in any of the areas of mental functioning, and Dr. Fujiwaki's opinion is consistent with that evidence and with the opinions of the State agency psychological consultants.

[*Id.*]. The ALJ also relied on both Plaintiff's pre-onset-date psychological evidence and post-onset-date psychological evidence when discussing the RFC limitations he was imposing:

> Mentally, although the evidence documents the claimant's complaints of decreased memory, her mental health provider generally noted that the claimant's memory was within normal limits (Exhibit B2F; Exhibit B5F; Exhibit B9F; Exhibit B11F). She was also observed to understand medication options and side effects (Id.). Therefore, she remains able to understand and remember simple instructions. Likewise, although she testified regarding significantly decreased concentration, her mental health provider and her primary care provider noted that she had good or normal attention and concentration (Exhibit B2F; Exhibit B3E p. 13; Exhibit B5F; Exhibit B9F; Exhibit B10F p. 3; Exhibit B11F). Accordingly, she is able to maintain concentration for simple tasks.
>
> The claimant reported that she has difficulty managing stress and changes in routine; however, treatment records indicate that during the adjudicative period, the claimant moved into a new home, traveled to visit her son in New York, and

traveled to visit family in Houston (Exhibit B10F p. 6; Exhibit B11F p. 31; Exhibit B12F p. 4). Therefore, she is able to adapt to infrequent change. Finally, although the claimant reported a tendency to self-isolate, the evidence indicates that she is able to shop in stores and use public transportation, and treatment providers and Dr. Blaine described the claimant as pleasant (Exhibit B2F; Exhibit B5F; Exhibit B7F; Exhibit B9F; Exhibit B11F). The undersigned finds that the claimant remains able to have occasional interaction with the public, coworkers, and supervisors.

[Tr. 28–29]. The ALJ's analysis makes clear that he recognized that Dr. Fujiwaki's was from prior to the alleged onset date and that, while he considered Dr. Fujiwaki's opinion in his analysis, he considered it alongside the post-onset-date evidence as well. The Court therefore finds no error in the ALJ's reliance, in part, on Dr. Fujiwaki's opinion. *See, e.g.*, *Spenlau v. Comm'r of Soc. Sec.*, No. 5:22-CV-00630-PAB, 2023 WL 3182541, at *8 (N.D. Ohio Apr. 14, 2023) (finding the ALJ did not err when formulating her RFC by relying in part of a psychological evaluation from three years prior to the alleged onset date when the ALJ considered both the pre- and post-onset evidence), *report and recommendation adopted*, 2023 WL 3173700 (N.D. Ohio May 1, 2023).

The Court further finds that the ALJ's analysis shows he did not substitute his own judgments or conclusions for that of the medical experts or err in failing to order a follow-up psychological consultative examination. The only case Plaintiff relies on in arguing that the ALJ did err is this Court's opinion in *Smith v. Astrue* [Doc. 19 p. 13]. In that case, the plaintiff's treating physicians made "occasional references" to the plaintiff's mental impairments. *See Smith*, 2009 WL 1616991, at *2. The only other evidence in the record of the plaintiff's potential mental impairments was an examination report from a licensed psychologist who evaluated the plaintiff at her attorney's request. *See id.* While the licensed psychologist opined that the plaintiff had several severe mental impairments, the ALJ found the opinion unpersuasive because it was internally inconsistent. *See id.* The ALJ, in turn, found that Plaintiff had no severe mental impairments. *See id.* On appeal, this Court held that while there may have been some

31

inconsistencies in the psychologist's report, the ALJ nevertheless erred because,

> [w]here the treating physician opinions do not contradict . . . that the plaintiff suffered from mental impairments and where the record raises a suspicion of mental impairment and unanswered questions as to the severity of those, the ALJ is not permitted to substitute his own conclusion that there was no evidence of significant mental impairment for that of the only examining psychologist.

*Id.* As a result, the Court found that "a consultative examination was necessary to enable to the ALJ to make the disability decision." *Id.*

In this case, unlike *Smith*, the ALJ did not improperly substitute his own judgment for that of the medical experts. To the contrary, he relied on the evidence and opinions from several experts, including Dr. Fujiwaki, Plaintiff's mental health providers, and the state agency medical consultants—which he found persuasive—in concluding that while Plaintiff has severe mental impairments at step two [Tr. 22], her impairments were insufficient to warrant more restrictive limitations than those opined by the ALJ in his RFC [*Id.* at 28–30 (citing the evidence from Plaintiff's mental-health providers, Dr. Fujiwaki's report, and the state agency medical consultants)]. The Court therefore finds that the ALJ in this case did not substitute his own judgment for that of the medical experts. *See Jones v. Berryhill*, 392 F.Supp.3d 833, 855 (M.D. Tenn. Aug. 2, 2019) ("Contrary to Plaintiff's assertion, the ALJ did not substitute her own medical judgment in place of Dr. Herr's; rather, the ALJ considered the medical and testimonial evidence to reach her decision as demonstrated above. The ALJ properly evaluated the evidence in reaching this RFC determination, and the Regulations do not require more.").

That the ALJ had several relevant reports and opinions regarding Plaintiff's mental impairments that he could—and did—rely on also shows why the ALJ was not required to order another psychological consultative examination. "Generally, [the Commissioner] will not request a consultative examination until [they] have made every reasonable effort to obtain evidence from

32

your own medical sources." 20 C.F.R. 416.912(b)(2). "If [the] medical sources cannot or will not give [the ALJ] sufficient medical evidence about [an] impairment . . . to determine whether you are disabled or blind, [the ALJ] may ask [the claimant] to have one or more physical or mental examinations or tests." *Id.* § 416.917. "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). An ALJ is not required to order a consultative examination "unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Id.* (quotation omitted); *see also Rigot v. Comm'r of Soc. Sec. Admin.*, No. 1:21-CV-01575-DAR, 2023 WL 2987815, at *15 (N.D. Ohio Mar. 3, 2023) (applying *Landsaw* to the updated regulations).

Here, there is nothing in the record that indicates the ALJ did not believe he had sufficient evidence in the record to make a determination as to the limiting effects of Plaintiff's mental impairments. To the contrary, as noted above, the ALJ relied on several reports and opinions regarding Plaintiff's mental impairments from relevant sources in formulating Plaintiff's RFC. To that end, this case is distinguishable from *Smith*, where the only evidence available to the ALJ regarding the plaintiff's mental impairments was the opinion of the licensed psychologist that he found unpersuasive and a few minor notations from the plaintiff's treating physician. *See Smith*, 2009 WL 1616991, at *2. In addition, Plaintiff does not argue that he requested that the ALJ or Commissioner order a new psychological consultative examination be performed and the Court's own review of the record has not revealed any such request. *See Rigot*, 2023 WL 2987815, at *15 (nothing the plaintiff "has not provided any evidence that he requested a consultative examination regarding his borderline intellectual functioning"). The Court finds for all these reasons that the

33

ALJ did not err by not ordering a new psychological consultative examination.

The Court therefore finds that the ALJ did not err in considering Dr. Fujiwaki's opinion in conjunction with the other relevant record evidence procured after the alleged onset date; that he did not erroneously substitute his own judgment or opinions in place of the relevant medical opinions and evidence; and that he did not err in failing to order an updated consultative examination. The Court thus denies Plaintiff's basis for remand on these grounds.

### B. The ALJ's Evaluation of Plaintiff's Symptoms

Plaintiff's remaining argument is that the ALJ erred by failing to properly weigh her symptoms pursuant to Social Security Ruling 16-3p [Doc. 19 p. 14]. For the reasons discussed below, the Court finds that the ALJ applied the correct legal standards in evaluating Plaintiff's symptoms and that this determination that they were not entirely consistent with the record is supported by substantial evidence.

### 1. Applicable Law

A claimant's subjective complaints are one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. sections 404.1529(c)(3) and 404.929(c)(3) and Social Security Ruling 16-3p, 2017 WL 5180304 ("SSR 16-3p").

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established

34

medical condition is of such a severity that it can reasonably be
expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y,*

*Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)); *see also Chopka v. Saul*, No.

5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

When evaluating a claimant's subjective complaints, the Social Security Administration

"will review the case record to determine whether there are explanations for inconsistencies in the

individual's statements about symptoms and their effects, and whether the evidence of record

supports any of the individual's statements at the time he or she made them."  SSR 16-3p, 2017

WL 5180304, at *10.  The ALJ must consider certain factors when evaluating a claimant's alleged

symptoms, including:

> (i)   the claimant's daily activities;
>
> (ii)   the location, duration, frequency, and intensity of the pain or
> other symptoms;
>
> (iii)   precipitating and aggravating factors;
>
> (iv)   the type, dosage, effectiveness, and side effects of any
> medication the claimant takes or has taken to alleviate the pain or
> other symptoms;
>
> (v)   treatment, other than medication, a claimant receives or has
> received for relief of pain or other symptoms;
>
> (vi)   any measures the claimant takes or has taken to relieve the pain
> or other symptoms; and
>
> (vii)   other factors concerning the claimant's functional limitations
> and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529, 416.929. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination of a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones*, 336 F.3d at 475–76 (6th Cir. 2003)); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)).

### 2. Whether the ALJ Erred in Evaluating Plaintiff's Symptoms

In this case, the ALJ acknowledged Plaintiff's testimony regarding her symptoms:

> At the hearing, the claimant testified that she is not able to work due to pain in her feet and knees. She reported that her right leg is worse, and the soles of her feet burn (Hearing Testimony). She stated that she has difficulty breathing, and she has to sit to catch her breath often (Id.). She indicated that she uses a nebulizer machine and inhalers daily (Id.). She reported that she has hypertension, and she experiences headaches (Id.). She asserted that she is only able to be on her feet for ten to fifteen minutes at a time before she has to rest (Id.). She testified that she uses a seated walker when she goes to the doctor or to the grocery store (Id.).

36

Mentally, the claimant testified that she has depression and anxiety, which she treats with anxiety and counseling. She reported that she has difficulty interacting with people (Hearing Testimony). She stated that she is not able to concentrate, and she needs has problems remembering appointments (Id.). She alleged that she has panic attacks at least twice a week and they last three to four hours at a time (Id.). She reported that she has difficulty sleeping and she is tired throughout the day (Id.).

[Tr. 25–26]. The ALJ then made the following findings regarding Plaintiff's symptoms:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the medical evidence of record, which documents consistent, but relatively conservative, treatment for the claimant's impairments throughout the adjudicative period.

[*Id.* at 26]. The ALJ then proceeded to detail Plaintiff's treatment history based on the record evidence, explain the evidence that supported his specific RFC limitations, and evaluate the persuasiveness of the relevant medical opinions, state agency consultants' evaluations, and prior disability determinations [*Id.* at 26–31].

Plaintiff submits that the ALJ failed to properly weigh her symptoms in this case "as those symptoms are amply supported by the Plaintiff's mental health treatment and by the reports of the Commissioner's own consultative physician, Dr. Blaine" [Doc. 19 p. 14]. Specifically, Plaintiff cites her testimony that "she could not concentrate" [*Id.* (citing Tr. 50)], and argues this testimony "is amply supported by the Plaintiff's long treatment at the Watauga Mental Health Center" [*Id.*]. Plaintiff also cites her testimony that "[s]he thought that she could be on her feet for about three hours a day" [*Id.* (citing Tr. 54)], which is "the exact limitation opined by Dr. Blaine" [*Id.* (citing

37

Tr. 406)].  Plaintiff avers that "[her] symptoms should have been fully credited pursuant to [SSR 16-3p]" [*Id.* at 14–15].

The Commissioner responds that "[i]n finding Plaintiff's debilitating complaints inconsistent with the record as a whole, the ALJ considered the objective evidence and Plaintiff's course of treatment" and that these "were valid factors to consider" [Doc. 23 p. 10 (citing 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); SSR 16-3p; *id.* at 10–12 (citing objective evidence and treatment records the ALJ considered related to Plaintiff's mental and physical impairments)].  The Commissioner also argues that "the ALJ considered Plaintiff's reported activities" as well, which "was another valid factor to consider" [*Id.* at 12 (citing *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013))].  Finally, in response to Plaintiff's argument that the ALJ should have "fully credited" her symptoms, the Commissioner asserts that "[a]lthough Plaintiff may understandably wish the ALJ had evaluated the evidence differently, her mere disagreement with the ALJ's conclusions does not warrant remand" especially where "the ALJ considered Plaintiff's complaints and explained his reasons for finding them not entirely consistent with the record" [*Id.* (citing *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006))].

The Court finds that the ALJ applied the correct legal standards in evaluating Plaintiff's symptoms and that his determination that Plaintiff's symptoms are not entirely consistent with the record is supported by substantial evidence.  Notably, the ALJ acknowledged in his decision the same, or materially similar, symptoms to those that Plaintiff argues on appeal should have been fully credited, including her testimony that she could not concentrate [Tr. 26 ("[Plaintiff] stated that she is not able to concentrate, and she [] has problems remembering appointments."), as well as her testimony that she was only able to be on her feet for limited amounts of time [*Id.* at 25 ("She asserted that she is only able to be on her feet for ten to fifteen minutes at a time before she

has to rest"); *id.* at ("Although she asserted that [] she is not able to be on her feet for prolonged periods . . .")].[7]

In addition to acknowledging this testimony, the ALJ also explained why such testimony was inconsistent with the record evidence. As to Plaintiff's ability to concentrate, the ALJ cited: (1) Dr. Fujiwaki's findings prior to the alleged onset date that Plaintiff "was oriented, with intact concentration and attention for the tasks administrated, but she had mildly impaired recent and remote memory skills" [Tr. 27]; (2) an intake evaluation with Frontier Health just before the alleged onset date at which time "[t]he provider noted that [Plaintiff] had full affect, her memory was within normal limitations, and she had good attention, concentration, insight, and judgment" [*Id.*]; (3) treatments records from July 2019 that showed Plaintiff "had another normal mental status examination" [*Id.* at 28]; and (4) treatment records from a later date in which "[Plaintiff's] mental health provider continued to document normal mental status examinations, with observations of calm and pleasant behavior, good eye contact, normal speech, coherent thought process, full affect, normal memory, and good attention, concentration, insight, and judgment" [*Id.*]. Based on these, and other, records the ALJ found that "although [Plaintiff] testified regarding significantly decreased concentration, her mental health provider and her primary care provider noted that she had good or normal attention and concentration" [*Id.* at 28–29 (citing Exhs. B2F, B3E, B5F, B9F, B10F, B11F)]. In turn, the ALJ incorporated into his RFC finding that Plaintiff could "maintain concentration for simple tasks" [*Id.* at 25]. The Court finds that the ALJ's reasoning for finding Plaintiff's testimony regarding her inability to concentrate not entirely

---

[7] While Plaintiff cites her testimony that she could only be on her feet for three hours per day, the Court finds this testimony to be materially similar to the testimony cited by the ALJ regarding Plaintiff's alleged ability to only be on her feet for fifteen minutes at a time.

consistent with the record and, instead limiting her to simple tasks, is supported by substantial evidence in the record. *See Camille H. v. Kijakazi*, No. 1:22-CV-00011-HBB, 2023 WL 1415619, at *4 (W.D. Ky. Jan. 31, 2023) (finding the ALJ's determination that the claimant was limited to "simple, routine tasks" was supported by substantial evidence including medical records that "show[ed] that Plaintiff's concentration was found to be normal or adequate").

The Court also finds that the ALJ's reasoning for finding Plaintiff's testimony regarding her inability to be on her feet for three hours per day was inconsistent with the record evidence is also supported by substantial evidence. As it relates to Plaintiff's ability to stand and walk, the ALJ cited: (1) Dr. Blaine's findings that Plaintiff had "normal station, tandem walk, heel and toe walk, and single leg stand bilaterally" [Tr. 27]; (2) the fact that Plaintiff's treatment providers did not document gait abnormalities [*Id.* at 28]; (3) the fact that Plaintiff's treatment providers declined to give her a prescription for her foot pain and instead recommended supportive shoes and over the counter corn pads to help with her corns and callouses [*Id.* at 26]; (4) the fact that at a follow-up appointment Plaintiff reported taking "Aleve with some benefit" for her foot pain [*Id.*] and (5) Plaintiff's "normal" right-knee x-rays [*Id.*]. The Court finds the ALJ's citation to this record evidence, including both treatment records and examination findings, provided substantial evidence for the ALJ's conclusion that Plaintiff's testimony regarding her inability to stand for more than three hours was not entirely consistent with the record. *See* SSR 16-3p, 2017 WL 5180304, at *10 (stating the ALJ "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them.").

40

The Court therefore finds that the ALJ's determination that Plaintiff's testimony regarding her symptoms was not entirely consistent with the record, including her testimony about both her inability to concentrate and inability to stand for more than three hours, is supported by substantial evidence. While Plaintiff argues to the contrary, her argument consists solely of pointing to evidence from the record that she asserts is consistent with her testimony. Specifically, she argues that her testimony regarding her inability to concentrate is "amply supported by [her] long treatment at the Watauga Mental Health Center" while her testimony regarding her inability to be on her feet for three hours a day is "the exact limitation opined by Dr. Blaine" [Doc. 19 p. 14 (citing Tr. 406)]. Plaintiff's reliance on this evidence is problematic, however, as this Court's review is limited to whether substantial evidence supports the ALJ's decision—as is the case here—not whether evidence in the record also supports a contrary conclusion. *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (internal quotations omitted)). This is especially true to the extent Plaintiff relies on the same evidence the ALJ relied on in determining Plaintiff's testimony was not entirely consistent with the record evidence [Tr. 28–29 (citing the fact that Plaintiff's "mental health provider [at Watauga Mental Health Center] and her primary care provider noted that she had good or normal attention and concentration" (citing Exhs. B2F, B5F, B9F)); *Id.* at 30 (finding Dr. Blaine's "opinion that [Plaintiff] is able to stand or walk for only three hours is not well supported by his other observations")]. *See Bialek v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-11508, 2021 WL 2935249, at *3 (E.D. Mich. July 13, 2021) ("The ALJ considered and discussed the very evidence on which Plaintiff relies. The Court cannot reweigh this evidence at this juncture." (citation omitted)).

For these reasons, the Court concludes that the ALJ properly considered Plaintiff's testimony regarding her symptoms and that his determination that such symptoms were not entirely consistent with the record is supported by substantial evidence. The Court therefore denies Plaintiff's remaining basis for remand.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 18**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 22**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

**ORDER ACCORDINGLY.**

Debra C. Poplin
United States Magistrate Judge